James M. Wood (SBN 58679)
Jayne E. Fleming (SBN 209026)
Amy Lifson-Leu (SBN 260062)
Katie B. Annand (SBN 260343)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA  94105-3659
Telephone:     +1 415 543 8700
Facsimile:      +1 415 391 8269

Attorneys for DORA BAIRES, individually, and on behalf the estate of JUAN CARLOS BAIRES; and Teofilo MIRANDA, an individual.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA BAIRES, et al.,<br><br>             Plaintiffs,<br><br>      vs.<br><br>THE UNITED STATES OF AMERICA et al.,<br><br>             Defendants. | No.:  C 09-05171 CRB<br><br>**PLAINTIFFS DORA BAIRES AND TEOFILO MIRANDA'S OPPOSITION TO INDIVIDUAL FEDERAL POLICY-MAKING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**<br><br>Complaint Filed:    October 30, 2009<br><br>Date:       March 11, 2011<br>Time:      10:00 am<br>Place:      Hon. Charles R. Breyer<br>                Courtroom 8 |

No. C 09-05171 CRB

PLAINTIFFS' OPPOSITION TO INDIVIDUAL FEDERAL POLICY MAKING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND .................................................................................................1

III. LEGAL ANALYSIS ...............................................................................................................3

    A. Standard of Review .......................................................................................................3

    B. Plaintiffs Have Alleged Facts Sufficient to Establish Claims Against The Individual Federal Defendants ........................................................................................4

        1. Plaintiffs Have Pled Sufficient Facts to State A Claim Under the Iqbal Standard ................................................................................................................4

        2. Plaintiffs Have Alleged Sufficient Facts to State a Claim for Deliberate Indifference. ..........................................................................................................8

    C. Plaintiffs Have Properly Pled That Defendants Are Directly Liable for Failing to Ensure that Plaintiffs Received Adequate Medical Care While Imprisoned ....................................................................................................................10

    D. No "Comprehensive Scheme" Exists Under the INA That Would Preclude Plaintiffs' Constitutional Claims .................................................................................11

    E. Likewise, Congress' Plenary Powers Over Immigration Matters Does Not Bar Plaintiffs' Claims. ........................................................................................................13

    F. Plaintiff Miranda Is Entitled To Injunctive Relief. ......................................................14

IV. CONCLUSION .....................................................................................................................15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No. C 09-05171 CRB

PLAINTIFFS' OPPOSITION TO INDIVIDUAL FEDERAL POLICY MAKING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## CASES

*Adams v. Johnson*, 355 F.3d 1179 (9th Cir. 2004) .......... 13

*Arevalo v. Woods*, 811 F.2d 487 (9th Cir. 1987) .......... 13

*Ashcroft v. Iqbal*, __U.S.__, 129 S. Ct. 1937 (2009) .......... 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 3, 4

*Carlson v. Green*, 446 U.S. 14 (1980) .......... 12

*Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984) .......... 3

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) .......... 4

*Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) .......... 13

*Davis v. Passman*, 442 U.S. 228 (1979) .......... 12

*Estelle v. Gamble*, 429 U.S. 97 (1976) .......... 8

*Farmer v. Brennan*, 511 U.S. 825 (1970) .......... 8

*Fiallo v. Bell*, 430 U.S. 787 (1977) .......... 13

*Harrison v. Ash*, 539 F.3d 510 (6th Cir. 2008) .......... 9

*Hathaway v. Coughlin*, 99 F.3d 550 (2d Cir. 1996) .......... 9

*Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004) .......... 8

*Kleindienst v. Mandel*, 408 U.S. 753 (1972) .......... 13

*L.W. v. Grubbs*, 974 F.2d 119 (9th Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993) .......... 10

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .......... 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 3

*Martinez-Aguero v. Gonzalez*, 459 F.3d 618 (5th Cir. 2006) .......... 12

*NOW, Inc. v. Schindler*, 510 U.S. 249 (1994) .......... 3

*Papa v. United States*, 281 F.3d 1004 (9th Cir. 2002) .......... 9, 12

*Parks School of Business, Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) .......... 3

*Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) .......... 10

*Pollard v. GEO Group, Inc.*, 607 F.3d 583 (9th Cir. 2010) .......... 10, 12

No. C 09-05171 CRB

PLAINTIFFS' OPPOSITION TO INDIVIDUAL FEDERAL POLICY MAKING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) .................................................................................. 12, 13

*Turkmen v. Ashcroft*, No. 02CV2307, 2006 WL. 1662663 (E.D.N.Y. June 14, 2006) ................. 13

*Velasquez v. Senko*, 813 F.2d 1509 (9th Cir. 1987) ....................................................................... 12

*Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999) ................................................................. 9

*Wang v. Reno*, 81 F.2d 808 (9th Cir. 1996) .................................................................................... 13

*West v. Atkins*, 487 U.S. 42 (1988) .......................................................................................... 10, 14

*Wong v. United States*, 373 F. 3d 952, 966 (9th Cir. 2004) ........................................................ 4, 5

*Wood v. Ostrander*, 879 F.2d 583 (9th Cir.1989), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990) ................................................................................................................. 10

No. C 09-05171 CRB

PLAINTIFFS' OPPOSITION TO INDIVIDUAL FEDERAL POLICY MAKING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT

## I.     INTRODUCTION

Plaintiffs Dora Baires ("Baires") and Teofilo Miranda ("Miranda") bring this suit on the grounds that Miranda and Baires' son, Juan Carlos Baires ("Juan Carlos") received grossly inadequate medical care while in the custody of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") and incarcerated in the Lerdo Detention Facility ("Lerdo") in Kern County.  Juan Carlos died in detention in November 2008, and Miranda experienced physical and emotional injuries, as a result of defendants' actions.  In addition to claims against the governmental entities and state actors, Plaintiffs bring claims against five individual federal defendants, who were personally involved in the conduct alleged in Plaintiffs' Second Amended Complaint ("SAC").  Four of those five individual defendants, John Torres, James T. Hayes, Nancy Alcantar, and Timothy Aitken (for purposes of this motion collectively "Individual Federal Defendants"), have filed this motion to dismiss the SAC.[1]  The Individual Federal Defendants'[2] motion should be denied, however, for the following reasons: (1) Plaintiffs have alleged sufficient facts to state a claim under federal law, (2) Plaintiffs have properly pled that the Individual Federal Defendants are liable for failing to ensure that Miranda and Juan Carlos received adequate healthcare while imprisoned, and (3) neither the Immigration and Nationality Act nor Congress' plenary power preclude Plaintiffs' constitutional claims.

## II.     FACTUAL BACKGROUND

DHS and ICE detained Juan Carlos from September 18, 2008 to November 12, 2008.  *See* Second Amended Complaint ("SAC") at ¶¶ 78, 105.  During his 54-day incarceration, federal and county officers and medical providers, and medical personnel acting as agents for the federal government, documented that Juan Carlos was HIV positive and required HIV medications to guard against life-threatening infections or even death.  *See e.g.*, SAC at ¶¶ 79, 83, 84.  Nevertheless, the

---

[1]     Defendant Brian Myrick filed his own motion to dismiss, to which Plaintiffs have responded in a separate document.

[2] Although they characterize themselves as "Individual Federal Policy-Making Defendants," the Individual Federal Defendants are in fact, simply individual defendants who are being sued based on their own culpable conduct, not based upon their claimed position as "just" policy-makers.

No. C 09-05171 CRB                                       - 1 -
PLAINTIFFS' OPPOSITION TO INDIVIDUAL FEDERAL POLICY MAKING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT

Individual Federal Defendants were deliberately indifferent to Juan Carlos' need for medical care, treatment and HIV medications. *See e.g.*, SAC at ¶¶ 85, 97. Plaintiff, Dora Baires, alleges that as a result of the Defendants' reckless and negligent medical care, Juan Carlos' immune system was severely weakened and his ability to fight off opportunistic infections was severely compromised. Juan Carlos developed severe pain in his left foot, and his repeated attempts to seek medical assistance were denied. *See e.g.,* SAC at ¶¶ 86, 89, 90, 91, 93, 94, 96, 97, Juan Carlos was supposed to see an HIV specialist, but ICE officers failed to transport him to that appointment. *See* SAC at ¶¶ 99, 100.

On November 11, 2008, Juan Carlos told a prison guard he was experiencing chest pain. Juan Carlos was transported to Kern County Medical Center, where he suffered cardiorespiratory arrest and died. *See* SAC at ¶¶ 102, 104, 105. Plaintiff Dora Baires contends that her son died as a direct result of the Individual Federal Defendants' deliberate indifference to his medical needs.

These Defendants were charged with the duty to ensure that detainees in their custody received adequate medical care; to inspect and monitor Lerdo and ensure it was in compliance with ICE National Detention Standards; and to take corrective action against Lerdo once it discovered it was out of compliance. *See* SAC at ¶¶ 145-147. These Defendants knew that Lerdo had flunked multiple inspections and received "at risk" and "deficient" ratings in the three years prior to Juan Carlos' death. These Defendants had a constitutional duty to ensure Juan Carlos received reasonable healthcare, and they had a duty to take remedial measures to ensure that he was not put at risk at Lerdo. They violated those duties and thus should be liable.

Teofilo Miranda alleges that he was incarcerated by Immigration and Customs Enforcement from September 18, 2008 to December 4, 2008. *See* SAC at ¶¶ 109, 133, 134. On several occasions, federal and county officers, medical providers, and medical personnel acting as agents for the federal government, documented that Miranda was HIV positive and required medications to guard against life-threatening infections or even death. *See e.g.,* SAC at ¶ 112, 113, 114, 115, 118, 121, 122, 124, 130, 133. Nevertheless, the Individual Federal Defendants denied Miranda the medical care, treatment and medications he required for his chronic condition. *See e.g.,* SAC at ¶¶ 114, 115, 118, 121, 122, 124, 130. Miranda alleges that the Individual Federal Defendants'

deliberate indifference, recklessness and negligence proximately caused him to develop physical symptoms of uncontrolled AIDS, suffer migraine headaches, and fear for his life.  His fear was compounded when he received news that his jail-mate, Juan Carlos Baires, had died after not receiving HIV medications.  *See* SAC at ¶¶ 129, 132.  After Juan Carlos' death, ICE officials transported Miranda to an appointment with an Army doctor, who examined Miranda and became alarmed with Miranda's deteriorating physical and emotional state.  *See* SAC at ¶¶ 133.  Miranda was immediately released.  *Id*.  The Individual Federal Defendants committed acts and omissions that resulted in Miranda's severe medical neglect and emotional distress.  They violated their constitutional duty to provide Miranda reasonable health care.  They violated their duty to ensure that Lerdo was in compliance with National Detention Standards.  They violated their duty to take remedial measures to protect Miranda, despite knowledge that Lerdo had had failing inspection ratings for three years running.

Plaintiffs filed their original complaint on October 30, 2009.  Plaintiffs amended their complaint on May 4, 2010.  The USA and the individual federal defendants filed motions to dismiss, and the Court granted the motions without prejudice.  On November 5, 2010, Plaintiffs filed the Second Amended Complaint.

### III.   LEGAL ANALYSIS

#### A.   Standard of Review

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when the allegations in the complaint contain "enough fact to raise a reasonable expectation that discovery will reveal evidence of" the violations alleged. *Id.* at 556.  A complaint's factual allegations, however, must be accepted as true. *Church of Scientology of California v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984).  The court must construe the pleading in the light most favorable to plaintiff and resolve all doubts in plaintiffs' favor. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("*Symington*").  Finally, general allegations are presumed to include specific facts necessary to support the claim. *NOW, Inc. v. Schindler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

No. C 09-05171 CRB                                - 3 -

PLAINTIFFS' OPPOSITION TO INDIVIDUAL FEDERAL POLICY MAKING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT

(1992)). The court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Here, the SAC contains specific facts, rather than blanket conclusions, allowing it to survive Defendants' motion to dismiss.

**B.    Plaintiffs Have Alleged Facts Sufficient to Establish Claims Against The Individual Federal Defendants**

Plaintiffs have properly alleged that the Individual Federal Defendants are liable for their own failure to ensure adequate medical care for Miranda and Juan Carlos. Contrary to the Individual Federal Defendants' claims, Plaintiffs do not allege that the Individual Federal Defendants are liable based on a theory of respondeat superior. Finally, no "comprehensive scheme" exists under the INA to regulate the provision of medical care to federal immigration detainees, nor does Congress's plenary power of immigration matters bar Plaintiffs' claims.

Accordingly, the Individual Federal Defendants' motion to dismiss should be denied in its entirety.

**1.    Plaintiffs Have Pled Sufficient Facts to State A Claim Under the *Iqbal* Standard**

The Individual Federal Defendants contend that Plaintiffs' claims are insufficient according to the standard established by *Ashcroft v. Iqbal*, __U.S. __, 129 S. Ct. 1937 (2009). Under the *Iqbal* standard, a plaintiff asserting a *Bivens* claim must allege more than bare conclusions that fail to "plausibly suggest an entitlement to relief." *Id*. at 1951. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The determination of facial plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.

The Individual Federal Defendants argue that the SAC "fails to satisfy the threshold personal involvement requirement." Motion to Dismiss 6:4-5. A plaintiff need not show direct, personal participation in an alleged constitutional violation to establish liability. *Wong v. United*

*States*, 373 F. 3d 952, 966 (9th Cir. 2004). Instead, the requisite causal connection can be established by the defendant "setting in motion a series of acts by others, which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id*. The critical question is whether it was reasonably foreseeable that the defendant's actions would lead to the alleged constitutional violation. *Id*.

Plaintiffs have met these pleading standards. The SAC notes that in 2007, ICE itself rated Lerdo as "at risk" meaning that ICE inspectors concluded that Lerdo's detention operations were impaired to the point that they were not able to accomplish their overall mission. *See* SAC ¶ 66. In 2008, the year that Miranda and Juan Carlos were incarcerated at Lerdo, ICE rated the facility as "deficient." *See id*. at ¶ 67. A "deficient" rating indicates that ICE believes the facility "internal controls are weak, thus allowing for serious deficiencies in one or more programs" and "one or more detention functions are not being performed at an acceptable level." *See id*.

As the ICE officers in charge of the San Francisco ICE Field Office, Defendants Alcantar and Aitken were "charged with reviewing these inspection reports [and] tak[ing] steps to protect detainees in their custody. *Id*. at ¶ 68. Yet, as the SAC alleges, Alcantar and Aitken continued to send immigration detainees with life-threatening medical conditions, including Miranda and Juan Carlos, to Lerdo "where they faced foreseeable, imminent, and devastating harm." *Id*. Alcantar's own declaration, filed concurrently with the Individual Federal Defendants' Motion to Dismiss, confirms this fact. "The decision on where to place detained aliens requires San Francisco ICE ERO officials to consider many factors…[and] [b]ased on these factors, San Francisco ICE ERO uses a variety of detention facilities, including Lerdo." Declaration of Nancy Alcantar In Support of Federal Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("Alcantar Dec.") at ¶ 12..

In addition, the SAC makes it clear that Alcantar and Aitken were aware of the numerous grievances relating to grossly inadequate medical care filed by Lerdo immigration detainees. According the SAC, "San Francisco Field Office Director for ICE-DRO (ALCANTAR) and the Field Office Director of the San Francisco Field Office of Enforcement and Removal Operations (AITKEN), ALCANTAR AND AITKEN would have received these reports." *Id*. at ¶ 69. Despite

reviewing both the ICE inspection reports, and medical grievances from immigration detainees in Lerdo, Alcantar and Aitken continued to send detainees with life-threatening medical conditions, including Miranda and Juan Carlos, to be incarcerated at Lerdo.

For example, Alcantar and Aitken were personally aware that Juan Carlos and Miranda were both HIV-positive asylum seekers, who required continuity of medical care and specialized medications to survive. As the ICE ERO officials in charge of the San Francisco ICE Field Office, Alcantar and Aitken would (or should) have reviewed Juan Carlos' and Miranda's files in order to make decisions on when and where to transfer them from facility to facility. Based on their review of Juan Carlos' and Miranda's files, Alcantar and Aitken determined where Juan Carlos and Miranda were to be housed, and authorized their transfers to Lerdo.

Alcantar and Aitken made the decision to transfer Miranda from Santa Clara jail to Lerdo, despite the fact that they knew that this would disrupt the continuity of his medical care, and despite the fact that they knew he had a pending appointment to see an HIV specialist in Santa Clara, which he was then forced to miss. *See*, SAC ¶ 117. Similarly, Alcantar and Aitken authorized Juan Carlos' transfer from Santa Rita jail to Lerdo, despite the fact that again, they were aware that he was HIV-positive and required continuity of medical care. In both cases, Alcantar's and Aitken's decision to transfer Juan Carlos and Miranda to Lerdo was in violation of the 2008 ICE National Detention Standards, which require a minimum level of care, as well as continuity of care when a detainee is transferred between facilities. Alcantar and Aitken were aware that Lerdo was failing to meet ICE's own standards for care of detainees, and yet they consciously decided to transfer both Juan Carlos and Miranda, whom they knew to be HIV-positive and thus particularly vulnerable, to be housed at Lerdo. This surely constitutes personal involvement sufficient to state a claim against Alcantar and Aitken.

Furthermore, Alcantar's declaration that "Lerdo was in compliance with the National Detention Standards" is not only self-serving, inadmissible on a motion to dismiss, and contrary to the controlling standard of review on this motion, but also glaringly wrong. *See,* Alcantar Dec., at ¶ 12. Alcantar knew in 2008, and still knows that Lerdo has received failing grades in ICE's own reviews of its performance. *See*, SAC ¶ 8. Alcantar and Aitken were both in positions where they

would have been required to review ICE's annual ratings of the detention facilities where detainees in their custody were housed, including Lerdo.

Torres and Hayes were also personally connected to the unconstitutional denial of medical care to both Miranda and Juan Carlos. As the SAC alleges, Torres and Hayes both reviewed the same ICE inspection reports as Alcantar and Aitken, which graded Lerdo as "at risk" and "deficient" in 2007 and 2008 respectively. *Id*. at ¶¶ 28-29. As the Assistant Secretary for ICE, Torres was "charged with a duty to investigate every death in ICE detention…[and] [a]s a result of conducting those investigations, TORRES reviewed medical records and reports that revealed widespread deficiencies in the DIHS managed care system, including delays or denials of treatment motivated by cost-cutting targets…[but] did nothing to address those deficiencies…." *Id*. at ¶ 28. Furthermore, as the SAC alleges, "TORRES reviewed medical records related to BAIRES, which showed a pattern of unreasonable denial of HIV medications and inadequate medical care. Yet TORRES did nothing to protect MIRANDA from the same harm at the same facility." *Id*.

Similarly, Hayes knew that ICE inspectors had graded LERDO "deficient" and "at risk" for several straight years, yet he did nothing to protect immigration detainees incarcerated at the jail, including Miranda and Juan Carlos. *Id*. at ¶ 29. Hayes was informed of Juan Carlos' death and reviewed the relevant medical records connected to his death, and "the records show a clear pattern of neglect and delayed treatment…[which] should have prompted HAYES to investigate conditions at LERDO to ensure that other immigration detainees, including MIRANDA, were not being unlawfully denied reasonable medical care.[yet] HAYES did not conduct an investigation or take any corrective actions." *Id*.

As the SAC makes clear, all four of the Individual Federal Defendants were thus personally aware of the unconstitutional denial of medical care to immigration detainees at Lerdo. Furthermore, all four were involved in the decision to continue to send immigration detainees, including Miranda and Juan Carlos, to be imprisoned at Lerdo. The Individual Federal Defendants knew that Lerdo was deficient in its provision of healthcare to immigration detainees, and knew that continuing to send chronically ill detainees to Lerdo posed an extreme risk to their health. Alcantar and Aitken reviewed grievances related to medical care filed by immigration detainees held at

No. C 09-05171 CRB — - 7 -

PLAINTIFFS' OPPOSITION TO INDIVIDUAL FEDERAL POLICY MAKING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT

Lerdo documenting the horrific lack of adequate care. And still, all of the Individual Federal Defendants chose to send Miranda and Juan Carlos to Lerdo. These facts show that Plaintiffs' have alleged sufficient facts and personal involvement on the part of the Individual Federal Defendant to state a claim for relief, and the Motion to Dismiss should be denied.

### 2. Plaintiffs Have Alleged Sufficient Facts to State a Claim for Deliberate Indifference.

The Individual Federal Defendants next argue that Plaintiffs have failed to adequately allege a claim for deliberate indifference. As a preliminary matter, Plaintiffs note that deliberate indifference is not the correct standard where Plaintiffs, as here, were civil rather than criminal detainees. *See*, *Jones v. Blanas*, 393 F.3d 918, 934 (9th Cir. 2004) (holding that civil detainees are entitled to "more considerate" treatment than criminal detainees, and therefore, "to prevail on a Fourteenth Amendment claim regarding conditions of confinement, the confined individual need not prove 'deliberate indifference' on the part of government officials").

The Supreme Court has held that the government has an affirmative duty to provide medical care to those whom it incarcerates. "[H]aving stripped [inmates] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer v. Brennan*, 511 U.S. 825, 833 (1970). The deliberate denial of medical care to prisoners therefore can constitute torture—a plain violation of the 8th Amendment. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976) (The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration" because failure to do so "may actually produce physical torture or a lingering death.") (internal citations omitted).

Nevertheless, Plaintiffs have also adequately pled their claims under the deliberate indifference standard.

> The deliberate indifference standard embodies both an objective and a subjective prong. Objectively, the alleged deprivation must be "sufficiently serious," in the sense that "a condition of urgency, one that may produce death, degeneration, or extreme pain" exists….Subjectively, the charged official must act with a sufficiently culpable state of mind.

*Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal citations omitted). "Officials may not . . . consciously disregard or act with deliberate indifference toward a detainee's safety by knowingly placing that person in harm's way." *Papa v. United States*, 281 F.3d 1004, 1010 (9th Cir. 2002). A detainee is not required to prove that he was completely denied medical care in order to state a claim of deliberate indifference. *See Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc). Rather, where, as here, officials have interfered with needed medical treatment they violate the Constitution. *See id.; see also Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) (prison officials' alleged failure to provide prescribed medications supported a claim of deliberate indifference to inmate's serious medical needs). Thus, in order to properly plead a claim for deliberate indifference, Plaintiffs must allege that Juan Carlos and Miranda had objectively serious medical needs that were not met, and that the Individual Federal Defendants consciously disregarded those needs.

Plaintiffs have met these elements. The SAC lays out the "serious medical needs" of both Miranda and Juan Carlos in detail. SAC ¶¶ 2-5, 76-77. "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Both Juan Carlos and Miranda were HIV-positive, and required life-sustaining medications to ensure their continued health, well-being, and survival. *Id*. Any layperson knows that an HIV-positive detainee would require ongoing medical care and specialized medications. Undoubtedly, Juan Carlos' and Miranda's status as HIV-positive is enough to constitute a "sufficiently serious" medical condition.

As discussed in Section B.1. *supra*, the Individual Federal Defendants were aware of, and still disregarded the excessive risk posed by incarceration at Lerdo. Contrary to the Individual Federal Defendants' claims, incarceration at Lerdo did create an excessive risk to Juan Carlos and Miranda's health, safety, and well-being. ICE itself rated the facility as "deficient," indicating that ICE believed the Lerdo's "internal controls are weak, thus allowing for serious deficiencies in one or more programs" and "one or more detention functions are not being performed at an acceptable

level." SAC ¶ 67. If even ICE found the conditions at Lerdo unacceptable, the Individual Federal Defendants were surely aware that incarcerating immigration detainees there posed an excessive risk to their health and safety.

Furthermore, it unconstitutional for governmental officials to place prisoners (or even private citizens) in harm's way. *Penilla v. City of Huntington Park*, 115 F.3d 707, 709 (9th Cir. 1997) ("[W]hen a state officer's conduct places a person in peril in deliberate indifference to their safety, that conduct creates a constitutional claim."). Here, Plaintiffs allege that the Individual Defendants deliberately denied medical care for both Juan Carlos and Miranda, thereby subjecting them to the risk of serious illness and death. This in itself is sufficient o state a claim for violation of Juan Carlos' and Miranda's constitutional rights. *See L.W. v. Grubbs,* 974 F.2d 119 (9th Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993) (concluding a valid section 1983 claim existed against a supervisor at a state facility who placed plaintiff in danger by assigning her to work with an inmate sex offender who had a history of violent assaults against women; he subsequently raped and kidnapped her); *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990) (concluding that a valid section 1983 claim existed against a state police officer who caused a woman to be stranded in a high-crime area at night where she was subsequently raped).

Plaintiffs have thus properly alleged that the Individual Federal Defendants are liable for deliberate indifference.

### C. Plaintiffs Have Properly Pled That Defendants Are Directly Liable for Failing to Ensure that Plaintiffs Received Adequate Medical Care While Imprisoned

The SAC alleges that the Individual Federal Defendants are directly liable for failing to take actions that would have prevented immigration detainees, including Miranda and Juan Carlos, from being subject to constitutional violations, medical neglect, and in the case of Juan Carlos, death. *See* SAC ¶¶ 28-31. These allegations are well grounded in Supreme Court law. *West v. Atkins*, 487 U.S. 42, 56 (1988) (holding that the United States has a "constitutional duty to provide adequate medical treatment to those in its custody."); *see also Pollard v. GEO Group, Inc.*, 607 F. 3d 583, 591 (9th Cir. 2010) (United States government has a "'constitutional duty' to provide adequate

care…[and cannot] 'deprive inmates of the means to vindicate their Eighth Amendment rights'"). Plaintiffs do not allege that the Individual Federal Defendants are liable under a theory of respondeat superior. *See* Motion to Dismiss, 7:5-15.

Furthermore, the Individual Federal Defendants fundamentally misconstrue Plaintiffs' claims. The SAC makes it clear that the Individual Federal Defendants each engaged in conduct that makes him or her directly liable to Plaintiffs. SAC ¶¶ 28-31. As discussed above, each of the Individual Federal Defendants was aware of the grossly inadequate medical and living conditions in Lerdo, and yet failed to take actions to discipline the facility, improve conditions, or prevent additional detainees from being sent there. Instead, they banished Plaintiffs there despite knowing of their serious medical conditions and the probability that they would be neglected and suffer harm. Thus, each of the Individual Federal Defendants is directly and individually liable for the injuries Plaintiffs suffered.

**D.    No "Comprehensive Scheme" Exists Under the INA That Would Preclude Plaintiffs' Constitutional Claims.**

The Immigration and Nationality Act is not a remedial statutory scheme, as suggested by the Individual Federal Defendants, and it in no way bars Plaintiffs' *Bivens* claims. Moreover, courts have recognized *Bivens* claims under the Fifth and Eighth Amendments and have recognized claims against immigration officers.

The Individual Federal Defendants, however, misconstrue Plaintiffs' pleadings by arguing that "[t]o no small extent, plaintiffs have written the SAC to make clear that they are challenging the federal decision-makers' authority to decide whether and how to house immigration detainees." Not only does this characterization inaccurately describe Plaintiffs' allegations, but it also ignores the compelling reasons Plaintiffs did bring this action: to address the grossly inadequate medical care received by Miranda and Juan Carlos. In no sense have Plaintiffs conveyed an intent to "preclude the use of contract detention centers." Instead, Plaintiffs seek compensation and injunctive relief related to the inhumane treatment Miranda and Juan received while in the custody of DHS and ICE, which was foreseeable given Lerdo's atrocious track record. Plaintiffs also seek compensation because Defendants violated their constitutional duty to provide Plaintiffs' reasonable

No. C 09-05171 CRB                                        - 11 -

PLAINTIFFS' OPPOSITION TO INDIVIDUAL FEDERAL POLICY MAKING DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT

healthcare and were deliberately indifferent to their serious medical needs.

Even if held liable, the Federal Defendants will remain free to exercise their discretion to decide whether and how to house civil detainees. Liability simply means that if their reckless choices kill a civil detainee, as happened here, they, rather than the helpless detainee, will bear that loss. As Dean Prosser would undoubtedly observe, that is an efficient and socially optimal way to allocate the risk in this situation.

The Individual Federal Defendants argue that Plaintiffs' "novel theory of *Bivens* liability" should not proceed because of the presence of a "deliberately crafted statutory scheme," the Immigration and Nationality, which, according to the Individual Federal Defendants, constitutes a special factor precluding a *Bivens* remedy. Motion at 7:25-26; 8:13-14. Federal courts have prohibited money damages remedies against federal officials for constitutional torts where "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (citations omitted). One special factor is the existence of statutory mechanisms giving meaningful remedies against the Unite d States. Other special factors considered by courts include "(1) whether it is feasible to create a workable cause of action; (2) whether extending the cause of action would undermine *Bivens's* deterrence goals; (3) whether an extension of *Bivens* would impose asymmetric liability costs on privately operated facilities as compared to government-operated facilities; and (4) whether unique attributes of an area, like the military, give reason to infer that congressional inaction is deliberate…." *Pollard*, 607 F.3d at 598.

Here, the Individual Federal Defendants attempt to argue that the INA precludes the *Bivens* relief sought by Plaintiffs. Nevertheless, no expansion of *Bivens* is needed to find a cause of action against the Individual Federal Defendants. Courts have long recognized *Bivens* actions brought under the Due Process Clause of the Fifth Amendment and the Cruel and Unusual Punishments Clause of the Eighth Amendments, such as the claims Plaintiffs bring here. *See Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment). In addition, courts have recognized *Bivens* actions against immigration officers. *See e.g., Martinez-Aguero v. Gonzalez*, 459 F.3d 618 (5th Cir. 2006); *Papa v. United States*, 281 F.3d 1004 (9th Cir. 2002); *Velasquez v. Senko*, 813 F.2d 1509 (9th Cir. 1987); *Arevalo v. Woods*, 811

F.2d 487 (9th Cir. 1987).

Moreover, the INA differs from the statutory scheme in *Schweiker*, the case relied on by the Individual Federal Defendants. In *Schweiker*, a *Bivens* remedy was not allowed because the statute's comprehensive remedial nature suggested that "Congress considered the types of wrongs that could be committed in the program's administration and provided meaningful statutory remedies," from which the Court could conclude that Congress's failure to provide a *Bivens* remedy was not inadvertent. *Adams v. Johnson*, 355 F.3d 1179, 1184 (9th Cir. 2004). The INA, however, is not a remedial scheme and provides no basis for concluding that Congress intended to preclude damages under *Bivens*. *See Wang v. Reno*, 81 F.2d 808, 814 n.8 (9th Cir. 1996). Instead, the INA is a regulatory scheme "for managing the flow of immigrants in and out of the country[;] it is by no means a comprehensive remedial scheme for constitutional violations that occur incident to the administration of the regulatory scheme." *Turkmen v. Ashcroft*, No. 02CV2307, 2006 WL 1662663, at *29 (E.D.N.Y. June 14, 2006). Further, while the INA gives ICE authority to detain non-citizens, it does not provide any scheme for the conditions of detention. The Individual Federal Defendants point to no authorities holding that the INA is in fact a remedial scheme.

Finally, a primary purpose of *Bivens* is to "deter individual federal officers from committing constitutional violations." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). The Individual Federal Defendants' argument suggests that a detained immigrant cannot bring any action against individual federal officers for violation of the detainee's constitutional rights. Yet such an approach does not conform to federal law, and the Individual Federal Defendants' Motion should be denied on this ground.

**E.      Likewise, Congress' Plenary Powers Over Immigration Matters Does Not Bar Plaintiffs' Claims.**

Congress's plenary power over immigration matters does not preclude Plaintiffs' claims against the Individual Federal Defendants. The Supreme Court has sustained Congress' plenary power to admit or exclude aliens. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972). Nevertheless, Congress' power in this realm does not extend to the adequacy of medical care given to non-citizens. The Individual Federal Defendants, however,

without pointing to any authority, claim that Congress' plenary power over immigration matters is "special factor" that counsels against a *Bivens* remedy in this action. No court has held that Congress' plenary power over a field categorically precludes claims under *Bivens*. In addition, Plaintiffs' claims here do not implicate Congress' plenary power to admit or exclude individuals from the country.

Moreover, the Individual Federal Defendants acknowledge that none of the authorities they cited "preclude a garden variety action" under *Bivens* based upon the deliberate indifference of a personally involved individual with respect to an individual detainee's right to medical care. This is the relief sought by Plaintiffs. Plaintiffs allege that the federal government and its officers, specifically the Individual Federal Defendants and Defendant Brian Myrick, violated the constitutional rights of Juan Carlos and Miranda by failing to provide adequate medical care to Juan Carlos and Miranda while both were in the custody of the federal government and unable to obtain medical services from any other entity or provider than the immigration authorities responsible for them. These allegations are cognizable claims [*West*, 487 U.S. at 56] and extend beyond immigration matters. The Individual Federal Defendants avoid addressing Plaintiffs' claim head on by claiming Plaintiffs seek to "create novel theories," yet the SAC shows that Plaintiffs' have stated a claim against the Individual Federal Defendants for deliberate indifference related to the Individual Defendants failure to provide adequate medical care to Juan Carlos and Miranda, which resulted in the death of Juan Carlos and physical and emotion damages to Miranda. Accordingly, Plaintiffs' *Bivens* claims are not barred by Congress's plenary powers over immigration matters

### F.     Plaintiff Miranda Is Entitled To Injunctive Relief.

Because Miranda has shown above that he has pled sufficient facts to state a claim for violation of his constitutional rights, he has stated a claim for injunctive relief.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court deny the Individual Federal Defendants' Motion to Dismiss, or In the Alternative, For Summary Judgment, in its entirety. In the case that this Court grants the Motion, Plaintiffs respectfully request that the Court grant them leave to amend.

DATED: February 18, 2011.

REED SMITH LLP

By  /s/ Jayne E. Fleming
    Jayne E. Fleming
    Attorneys for Plaintiffs
    Dora Baires, individually, and on behalf of the estate of Juan Carlos Baires; and Teofilo Miranda