IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA BAIRES, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | No. C 09-05171 CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS SECOND AMENDED COMPLAINT** |

Plaintiffs Juan Carlos Baires[1] and Teofilo Miranda have brought suit against a great number of Defendants, alleging that two HIV positive Immigration and Customs Enforcement ("ICE") detainees at the Lerdo Pre-trial Detention Facility ("Lerdo"), one of whom died in custody, received horrifically inadequate medical care. In three separate motions, the federal defendants move to dismiss the Second Amended Complaint ("SAC"). For the reasons described below, the Court grants the motions, in part and without prejudice.

**I.   BACKGROUND**

The allegations in the SAC are essentially as the Court described them in its September 2010 Order (dkt. no. 77), and so they will not be detailed here. In sum, Baires had been diagnosed as HIV positive and was taking life-saving antiretroviral medications at the time ICE took him into custody on October 20, 2008. SAC (dkt. no. 80) ¶¶ 2; 83.

---

[1] Baires's mother, Dora, sues on his behalf. Id. ¶ 21.

Although he told several people that an interruption in his medication would put him in great danger, his supply of medication was cut off while at Lerdo. Id. ¶ 2. Denied adequate care, Baires's condition worsened until he died of a painful and untreated staph infection on November 12, 2008. Id. ¶ 105. Teofilo Miranda is also HIV positive and had an upcoming appointment to get treatment at the time ICE took him into custody on September 18, 2008. Id. ¶¶ 109, 111. Despite informing numerous officers and medical staff that he needed HIV medications, Miranda missed his scheduled appointment, suffered pain and anxiety, and did not receive competent care until December 4, 2008. Id. ¶¶ 112-133. He was released that same day. Id. ¶ 134.

Plaintiffs initially brought suit against, among others, several federal defendants, in October 2009. See dkt. no. 1. They amended with the Court's permission in May 2010. See dkt. nos. 50, 51. The Court dismissed the First Amended Complaint as to all federal defendants in September 2010. See dkt. no. 77. Plaintiffs amended again. See SAC (dkt. no. 80). Now pending are three motions to dismiss: (1) a motion by individual federal defendant Brian Myrick (dkt. no. 94); (2) a motion by individual federal defendants John Torres, James Hayes, Nancy Alcantar and Timothy Aiken (dkt. no. 95); and (3) a motion by the United States (dkt. no. 92).

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949-50. In determining facial plausibility, whether a complaint states a plausible claim is

2

a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

## III. DISCUSSION

### A. Motion to Dismiss by Brian Myrick

The first pending motion is that of individual federal defendant Brian Myrick (dkt. no. 94). Myrick is a deportation officer for the Department of Homeland Security ("DHS") at the Bakersfield ICE office, and was Baires's deportation officer at Lerdo. SAC ¶ 32. Despite being mentioned in the First Amended Complaint ("FAC"), Myrick was not initially a defendant. See Order (dkt. no. 77) at 4 n.2. He was added as a defendant in the SAC. See SAC (dkt. no. 80) at ¶ 277.

The only claim for relief as to Myrick is the Eighteenth: "Claim for Declaratory and Injunctive Relief Based on Violations of the Fifth and Eighth Amendments to the United States Constitution (By Plaintiff MIRANDA as to All Defendants)." Id. But the only factual allegations as to Myrick pertain to Baires, not Miranda. See SAC ¶ 85 (alleging that Baires's attorney sent an urgent fax to Myrick alerting him that Baires had not received his medications, and that Myrick did not respond for three days, after which Myrick called the medical clinic at Lerdo). There is no allegation that Myrick was either responsible for, or in any way involved with, Miranda. Thus, the Eighteenth claim for relief, alleging that the Defendants "violated the constitutional rights of immigration detainees by failing to provide appropriate medical care" does not plausibly state a claim against Myrick as to Miranda.[2] Accordingly, that claim is dismissed without prejudice.[3]

//

//

---

[2] Myrick styles his Motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment," see dkt. no. 94, and submits a declaration affirmatively asserting that he had no involvement with Miranda. See Myrick Decl. (dkt. no. 94-1) at 2. The Court will not consider this declaration on a motion to dismiss and the Court does not convert his Motion to a motion for summary judgment.

[3] Defendants note that "[t]his is plaintiffs' third go-round in this lawsuit" and urge dismissal with prejudice. Reply (dkt. no. 103) at 1. Although this is Plaintiff's third complaint, it is only the first complaint that includes Myrick. Moreover, unlike the other federal defendants, Myrick was personally involved in Baires's care.

### B. Motion to Dismiss by the Other Individual Federal Defendants

In the second pending motion, the other individual defendants also move to dismiss (dkt. no. 95). Those defendants are: (1) John Torres, Assistant Secretary for ICE, responsible for, among other things, "ensuring the safety and wellbeing of persons detained in ICE custody," SAC ¶ 28; (2) James Hayes, Director of [the Office of Detention and Removal] for ICE, "responsible for the safe, secure and humane housing of immigration detainees in ICE custody," id. ¶ 29; (3) Nancy Alcantar, San Francisco Field Office Director for ICE-DRO, "responsible for approving placements of detainees at [Lerdo]," id. ¶ 30; and (4) Timothy Aitken, Field Office Director of the San Francisco Field Office of Enforcement and Removal Operations, "responsible for the medical care and wellbeing of immigration detainees at Lerdo," id. ¶ 31.

Plaintiffs allege two Bivens causes of action against these defendants (the First and Second Claims for Relief), as well as a declaratory and injunctive relief claim on behalf of Miranda only (the Eighteenth Claim for Relief). See id. ¶¶ 161-75, 277-80. The Bivens claims allege that these defendants violated Plaintiffs' rights to reasonable medical care under the Fifth and Eighth Amendments by failing to provide adequate medication and to treat their known serious medical conditions. Id. ¶¶ 162, 170. The SAC alleges that defendants acted with "deliberate indifference," id. ¶¶ 166, 175, and that they specifically: "failed to provide reasonable medical care; failed to ensure continuity of care; failed to adequately screen and monitor detention facilities; and failed to prevent recurring abuses," id. ¶¶ 165, 173. The declaratory and injunctive relief claim is based on the same violations of the Fifth and Eighth Amendments. Id. ¶¶ 277-80.

#### 1. Threshold Foreseeability Showing

In Bivens actions, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 129 S. Ct. at 1949; see also Black v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004) ("[a]n individual cannot be held liable under § 1983 'merely because he held a high position of authority,'"). Nonetheless, "direct, personal participation is not necessary to establish liability for a

4

1 constitutional violation . . . . The requisite causal connection can be established . . . by setting
2 in motion a series of acts by others which the actor knows or reasonably should know would
3 cause others to inflict the constitutional injury." Wong v. United States, 373 F.3d 952, 966
4 (9th Cir. 2004) (internal quotation marks and citation omitted).[4]  The key question in these
5 cases is thus "whether it was reasonably foreseeable" that the actions of the named
6 defendants "would lead to the rights violations alleged to have occurred." Id. (emphasis
7 added).  Based on the allegations of the SAC, the Court concludes that it was not.

### a. Alcantar and Aitken[5]

The SAC alleges that there were "dozens" of inmate grievances about inadequate medical care at Lerdo, SAC ¶ 9, and that Alcantar and Aitken would have received those grievances, id. ¶ 69. It further alleges that ICE's own inspection reports show that Lerdo was out of compliance with National Detention Standards, receiving ratings of "at risk"[6] or "deficient"[7] since 2004. SAC ¶ 8.[8] And it alleges that Alcantar and Aitken were "charged with reviewing . . . [those] inspection reports [and] tak[ing] steps to protect detainees in their custody," yet "continued to banish immigration detainees with life-threatening medical conditions to Lerdo where they faced foreseeable, imminent and devastating harm." Id. ¶ 68.

---

[4] Other bases of Bivens liability exist but are not applicable here. See, e.g., al-Kidd v. Ashcroft, 580 F.3d 949, 965 (9th Cir. 2009).

[5] Defendants assert in their Reply that Plaintiffs treat Aitken and Alcantar "as though there [sic] were one person." Reply (dkt. no. 104) at 5. They go on to assert that "Plaintiffs present no facts why a claim should exist against Alcantar[,] who has not been the Field Office Director since 2003; neither detainee in this case is alleged to have been taken into custody until 2008." Id. at 5. But in her declaration, Alcantar asserts that she was the Field Office Director from 2003 to 2009. Alcantar Decl. ¶ 2.

[6] According to the SAC, Lerdo was rated "at risk" in 2007; "at risk" means that Lerdo's "detention operations [were] impaired to the point that they [were] not accomplishing their overall mission" and that Lerdo's "internal controls [were] not sufficient to reasonably ensure acceptable performance [could] be expected in the future." SAC ¶ 66.

[7] According to the SAC, Lerdo was rated "deficient" in 2008; "deficient" means that "one or more detention functions are not being performed at an acceptable level" and that Lerdo's "internal controls are weak, thus allowing for serious deficiencies in one or more programs." SAC ¶ 67.

[8] Alcantar states in her declaration that "Lerdo was in compliance with the National Detention Standards." Alcantar Decl. ¶ 12. The Court does not consider this assertion in ruling on the motion to dismiss, and focuses its attention instead on the SAC's allegations.

5

The Court cannot conclude that the knowing transfer of HIV positive detainees to a detention facility – even one with poor inspection results and dozens of inmate grievances – plausibly alleges the necessary foreseeable harm. This case is therefore distinguishable from those in which a Bivens action was viable. See L.W. v. Grubbs, 974 F.2d 119, 121-22 (9th Cir. 1992) (allegations supported liability where state correctional officials assigned her to work with an individual with "an extraordinary history of unrepentant violence against women and girls," who was "likely to assault a female if left alone with her," knew that she would be alone with him, and that she would not be prepared to defend herself – and that individual assaulted, kidnapped and terrorized her); Wood v. Ostrander, 879 F.2d 583, 589-90 (9th Cir. 1989), cert. denied, 498 U.S. 938 (1990) (triable fact as to whether officer who caused a woman to be stranded in a high-crime area at 2:30 a.m. where she was subsequently raped was liable in a Bivens action); Anthony v. Schackmann, 402 Fed. Appx. 207, at \*\*1 (9th Cir. 2010) (evidence that defendants falsified a misconduct report, which caused their supervisor to place plaintiff in segregation, raised triable issue of defendants' liability for segregation). Something more is necessary. If an inspection report showed that Lerdo was not capable of delivering adequate medical care to HIV positive detainees, and the defendants were aware of the report, but they nonetheless sent HIV positive detainees to Lerdo, the Court might find the requisite foreseeability. Those are not the allegations. The SAC does not tie the inspection reports to the provision of medical care; one could imagine a facility at which "one or more detention functions [were] not being performed at an acceptable level," that nonetheless provided adequate medical care. Accordingly, the SAC does not plausibly allege that Lerdo was foreseeably dangerous to HIV positive detainees.

### b. Torres and Hayes

The SAC alleges that Torres (1) reviewed the same ICE inspection reports as Alcantar and Aitken, (2) "had a duty to investigate every death in ICE detention," (3) should have been aware of "widespread deficiencies in the DIHS[9] managed care system," (4) "reviewed medical records related to Baires," yet (5) "did nothing to protect Miranda from the same

---

[9] DIHS stands for Division of Immigration Health Services.

6

1  harm at the same facility." SAC ¶ 28. As to Hayes, the Complaint alleges that he (1)
2  reviewed the same ICE inspection reports as Alcantar and Aitken, (2) was informed of
3  Baires's death, and (3) reviewed the records as to Baires's death, which "should have
4  prompted [him] to investigate conditions at Lerdo to ensure that other immigration detainees,
5  including Miranda, were not being unlawfully denied reasonable medical care." Id. ¶ 29.

6       For the same reasons discussed above, the inspection reports alone do not suffice to
7  plausibly plead foreseeability. In addition, the Court has already held in dismissing the FAC
8  that "[t]he fact that ICE keeps track of the status of all detainees cannot mean that the
9  directors of various agencies are aware, at all times, of the status of each and every detainee."
10 Order at 11. Even assuming that both Hayes and Torres reviewed the records relating to
11 Baires's death, on November 12, 2008, SAC ¶ 105, Miranda was taken into custody on
12 September 18, 2008, id. ¶¶ 109, 111, and released on December 4, 2008, id. ¶¶ 112-133. The
13 SAC does not allege when these defendants were made aware of Baires's death, and whether
14 Miranda was still in custody at that time. As currently pleaded, there are too many
15 inferential leaps required to conclude that Hayes and Torres reviewed the records involved
16 with Baires's death, drew a connection between Baires's death from a staph infection and
17 Miranda's requests for HIV treatment, failed to take action, and therefore caused Miranda's
18 constitutional harm.

19      Plaintiffs have failed to meet the threshold foreseeability test for holding these
20 defendants liable.

21           **2.    Substantive Bivens Claims**

22      Even if the Court were to reach the merits of the Bivens claims, however, Plaintiffs
23 have failed to state a claim.

24      To the extent Plaintiffs allege that the defendants should have more carefully
25 supervised the conditions at Lerdo, there is no respondeat superior or vicarious liability under
26 Bivens. See Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991); Iqbal, 129 S. Ct. at
27 1948; see also Hawkins v. Sandor, Case No, EDCV 09-1862 JST (SS), 2010 WL 4180887, at
28

7

*3 (C.D. Cal. Sept. 17, 2010) (warden may not be liable for conditions at an institution simply because he supervised others at the institution).

Plaintiffs' claim of inadequate medical care also fails. To state a claim for deliberate indifference,[10] a plaintiff must demonstrate both that (1) the medical need was severe (objective test), and (2) the defendant official acted with a sufficiently culpable state of mind (subjective test). Smith v.Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003). Indisputably, Plaintiffs have met the first element by alleging that both Plaintiffs were HIV positive. But to satisfy the second element, "an inadvertent failure to provide adequate medical care" is not sufficient. See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); see also Farmer v. Brennan, 511 U.S. 825, 836 (1994) (describing deliberate indifference as "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other"). Courts are to inquire whether "the [prison official] knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citing Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175 (9th Cir. 2002)). In addition, "[a] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Phelps v. Kapnolas, 308 F.3d 180, 186 (2d Cir. 2002).

Here, as already discussed, the Court cannot find that the knowing transfer of HIV positive detainees to a detention facility that has received poor inspection results and has been the subject of dozens of grievances – without more – demonstrates either an excessive risk to detainee safety or that these individual federal defendants in fact knew of that risk. Although Plaintiffs cite authority for the uncontroversial position that a prison officer interfering with needed medical treatment can violate the Constitution, see Opp'n at 9, the allegations as to these defendants are far more attenuated.

---

[10] The SAC and the parties both speak of "deliberate indifference" to Plaintiffs' medical needs, see SAC ¶¶ 166, 175, Mot. at 5, Opp'n at 8, but this is not quite the correct standard. Because civil detainees awaiting adjudication are entitled to conditions of confinement that are not punitive, "to prevail on a Fourteenth Amendment claim regarding conditions of confinement, the confined individual need not prove 'deliberate indifference' on the part of government officials," but is entitled to "'more considerate' treatment." See Jones v. Blanas, 393 F.3d 918, 934 (9th Cir. 2004). Neither party seems to know quite how to apply that standard, and both fall back on the deliberate indifference test. See, e.g., Opp'n at 8 ("Nevertheless, Plaintiffs have also adequately pled their claims under the deliberate indifference standard"). This Order therefore tracks the parties' analysis.

The Bivens claims are therefore dismissed, without prejudice.

### 3. Declaratory and Injunctive Relief

Because there is no Bivens liability as currently pleaded, there is also no entitlement to declaratory or injunctive relief. These claims are also dismissed, without prejudice.

## C. Motion to Dismiss by the United States

The third and final pending motion is that of the United States (dkt. no. 92). The SAC alleges that the United States is liable (1) to Baires under the Federal Tort Claim Act ("FTCA") for negligence (Fourteenth Claim for Relief) based on failing to provide reasonable medical care, failing to ensure continuity of care, failing to adequately screen and monitor detention facilities and failing to prevent recurring abuses, SAC ¶ 248; (2) to Miranda under the FTCA for negligence (Fifteenth Claim for Relief) based on the same actions, SAC ¶256; (3) to Baires under the FTCA for intentional infliction of emotional distress ("IIED") (Sixteenth Claim for Relief), SAC ¶¶ 258-66; (4) to Miranda for IIED (Seventeenth Claim for Relief), SAC ¶¶ 267-276; and (5) to Miranda for Declaratory and Injunctive Relief (Eighteenth Claim for Relief), SAC ¶¶ 277-80.

The United States argues that (1) the Federal Tort Claim Act ("FTCA") claims alleging denial of care are barred by the independent contractor exception and the discretionary function exception, (2) Plaintiffs fail to identify a legally cognizable duty for which it can be held liable; and (3) there is no legal basis for the constitutional claims against it.[11] This Order will address each argument in turn.

### 1. Exceptions to the FTCA

The United States argues that the FTCA is only a limited waiver of sovereign immunity and that two exceptions to that waiver apply in this case. Mot. (dkt. no. 92) at 7 (citing Letnes v. United States, 820 F.2d 1517, 1518 (9th Cir. 1987)).

//

//

---

[11] The United States also renews its argument, already rejected by the Court in its earlier Order (dkt. no. 77), that Plaintiffs failed to exhaust their administrative remedies. See Mot. (dkt no 92) at 14.

9

### a. Independent Contractor Exception

The United States may only be sued for the negligence of its own employees. See 28 U.S.C. § 2671; Letnes, 820 F.2d at 1518. This Court has already held that "the FAC allege[d] that Plaintiffs were harmed by poor health care provided by non-federal actors," and that "[b]ecause the FAC further suggests that these actors were independent contractors, the United States is not liable for their allegedly tortious conduct under the FTCA." Order (dkt. no. 77) at 20. In their Opposition to the instant Motion to Dismiss, however, Plaintiffs argue that they are not seeking to hold Defendant liable for the acts of the independent contractors who ran Lerdo but rather "for the wrongful acts of [the United States's] own employees." Opp'n (dkt. no. 98) at 7.

Specifically, Plaintiffs suggest that the United States must always be liable for all instances of inadequate medical care, because the government cannot delegate its duty to provide reasonable medical care. See Opp'n at 7 (citing West v. Atkins, 487 U.S. 42, 56 (1988)). West involved a case against a physician employed by the state to provide medical services to state inmates and the question of whether he "acted under color of state law for purposes of § 1983 when undertaking his duties." Id. at 54. The Supreme Court held that the doctor was acting under color of state law:

> If Doctor Atkins misused his power by demonstrating deliberate indifference to West's serious medical needs, the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish West by incarceration and to deny him a venue independent of the State to obtain needed medical care.

Id. at 55 (emphasis added). The Court in West was determining whether the physician was liable, not the government. Even more significant, West had nothing to do with the government's liability under the FTCA – a fact Plaintiffs concede, though they argue that "the underlying reasoning . . . is pertinent." Opp'n at 8. But absent the FTCA and its very limited waiver of immunity, West is not pertinent. Plaintiffs point to no cases in which the United States was found liable for inadequate medical care provided by independent contractors.

10

1    Nonetheless, the Court does not conclude that the independent contractor exception
2 absolves the United States of all responsibility here.  The Court's Order dismissing the FAC
3 held that although the FAC contained allegations regarding four ICE officers who were
4 informed of Plaintiffs' need for medical care and "did not correct the problem," "the FAC
5 [did] not allege any facts regarding specifically what these Officers did or did not do."  Order
6 (dkt. no. 77) at 19.  The Order continued:

> Although the Officers were informed by Plaintiffs that they were not receiving their medication, <u>there is no allegation that the Officers did anything to directly contribute to the situation</u>.  The FAC even fails to directly allege that the Officers did not take reasonable actions in light of being told that Plaintiffs were not receiving their medication.

10 Id. (emphasis added).  As Plaintiffs argue in their Opposition, see Opp'n at 9-12, the SAC
11 now contains additional allegations as to relevant actions of the federal employees.  For
12 example, it alleges that Baires was transferred to Lerdo from Santa Clara County Jail without
13 his medical records or supply of HIV medication, SAC ¶ 82, that Myrick took three days to
14 respond to Baires's urgent fax about his need for medications, id. ¶ 85, that when Baires told
15 medical personnel that he was HIV positive and they transmitted the information to Division
16 of Immigration Health Services requesting an authorization for specialized care DIHS
17 personnel waited 16 days before sending its approval for an HIV "consult only" and not for
18 the needed medications, id. ¶ 95,[12] and that the ICE agents who took Miranda into custody
19 and to whom he told that he was HIV positive either did not relay that information to their
20 superiors, as obligated under National Detention Standards, or that they did so but their
21 superiors disregarded it, SAC ¶ 112.

22    Although it still appears to the Court that the independent contractors running Lerdo
23 were primarily responsible for the inadequate medical care Plaintiffs received there, it is no
24 longer the case that "there is no allegation that" the government itself "did anything to
25 directly contribute to the situation."  See Order (dkt. no. 77) at 19.  Here, no federal officer is
26 alleged to have taken Baires's medication away, see, e.g., Cesar v. Achim, No. 07C128, 2009

---

[12] The SAC alleges that "According to DIHS reports, the motive for this delay was cost savings." Id.

11

WL 2225414, at *1 (E.D. Wis. July 22, 2009), but they did allegedly transfer him without his medication, take an excessive amount of time to address his requests for medication, and cause Miranda to miss medical appointments at which he hoped to receive such medication. See SAC ¶¶ 82, 85, 95, 112. These allegations are adequate to state a claim against the United States under the FTCA. Therefore, at this time, the Court finds that the independent contractor exception bars the allegations in the SAC that pertain to independent contractors, but not those that pertain to federal employees.

### b. Discretionary Function Exception

The United States argues, however, that the discretionary function exception bars the remaining allegations under the FTCA. See Mot. at 8-11. The discretionary function exception bars subject matter jurisdiction over "[a]ny claim . . . based upon the exercise or performance or the failure to perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C.A. § 2680(a) (1994). Courts use a two-part test to determine the applicability of the discretionary function exception. See Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988). First, a court is to determine whether the challenged conduct involved a matter of choice for the acting employee; it will not apply where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Id. at 536. Next, a court is to determine, "assuming the challenged conduct involves an element of judgment, . . . whether that judgment is of the kind that the discretionary function exception was designed to shield." Id. The discretionary function exception is designed to shield "legislative and administrative decisions grounded in social, economic, and political policy.'" Id. at 536-37 (internal quotation marks omitted).

To the extent Plaintiffs challenge the decision to send individual detainees to Lerdo, such is precisely the kind of conduct protected by the exception. First, deciding whether to send detainees to one facility or another involves a matter of choice for an employee; the parties have not alerted the Court to anything prescribing a course of action for federal employees to follow. Second, the decision of where to send a detainee is necessarily

1  grounded in social, economic and political policy; employees must weigh numerous factors
2  pertaining to cost, various facilities' capabilities, geography, etc. It is not for the Court to
3  second-guess such decisions.

4  To the extent Plaintiffs challenge the United States's provision and/or supervision of
5  medical care, the exception does not apply to the facts as pleaded. Plaintiffs allege that
6  "DHS has adopted an explicit policy requiring on-going monitoring and inspection of all
7  immigration detention facilities to ensure that detainees are not put at risk," and that federal
8  employees "failed to follow this policy." Opp'n at 15 (citing SAC ¶¶ 243-57). At this point
9  in the litigation, these allegations escape the reach of the discretionary function exception.[13]
10 Defendants are free to raise this argument again after amendment or discovery, if
11 appropriate.

### 2. Whether the United States has a Duty

13 The United States further argues that the FTCA's waiver of immunity only extends to
14 claims that are viable under state law. Mot. at 13. Liability cannot be premised on violations
15 of federal statutes or on a "negligence per se cause of action which relies solely on federal
16 law as the source of duty." See Delta Sav. Bank v. United States, 265 F.3d 1017, 1026 (9th
17 Cir. 2001). The FTCA only provides for liability as to "circumstances where the United
18 States, if a private person, would be liable to the claimant in accordance with the law of the
19 place where the act or omission occurred, 28 U.S.C. § 1346(b), and that "law of the place"
20 means state law. See FDIC v. Meyer, 510 U.S. 471, 477-78 (1994). The SAC does not cite a
21 relevant state law. This is a fatal flaw under the FTCA. If and (presumably) when Plaintiffs
22 //
23 //

---

[13] Plaintiffs have requested some discovery to help develop facts relevant to the discretionary function exception. See Opp'n at 17-19. The Court believes that some discovery might prove useful, though not the full amount sought by Plaintiffs. Accordingly, the United States is directed to provide Plaintiff with any and all "manuals, protocols, reports and guidelines limiting the discretion of those charged with on-site and off-site monitoring facilities and implementing policies related to such monitoring" within thirty (30) days of this Order.

amend the complaint, they are instructed to include the state law upon which their FTCA claims rely.[14]

### 3. Constitutional Claims

As to the Eighteenth Claim for Relief, the SAC does not assert a statutory basis under which Plaintiffs are seeking injunctive and declaratory relief; the only statute it asserts is the FTCA. The FTCA only provides for money damages. See Steel, Inc. v. United States, 970 F.2d 648, 651 (9th Cir. 1992). Accordingly, this cause of action against the United States is dismissed, without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Myrick and individual federal defendants' Motions to Dismiss, without prejudice, and GRANTS IN PART AND DENIES IN PART the United States's Motion to Dismiss, also without prejudice.

**IT IS SO ORDERED.**

Dated: May 6, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[14] The United States makes a further, cursory argument that the IIED claims should be dismissed, asserting that "plaintiffs do not specify what exact conduct constitutes the outrageous conduct which caused the emotional distress" and that "to the extent that this claim is based on the defendants' failure to choose a different contractor after receiving Lerdo's ratings, the claim must also fail" because the "violation of federal standards alone cannot demonstrate negligence." Mot. at 13. To state a claim for IIED under California law, a plaintiff must allege: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. See Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982). The SAC adequately alleges these elements. See SAC ¶¶ 258-76.