IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA BAIRES, et al., | No. C 09-05171 CRB |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| v. | |
| THE UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

Plaintiffs Juan Carlos Baires[1] and Teofilo Miranda, two HIV-positive individuals who were Immigration and Customs Enforcement ("ICE") detainees at the Lerdo Pre-trial Detention Facility ("Lerdo"), filed a Third Amended Complaint ("TAC") alleging that they received horrifically inadequate medical care while at Lerdo. See TAC (dkt. 122) ¶¶ 3-5. At this point, there is no real dispute that that allegation is true; the question instead is who can be held responsible. Plaintiffs sued the federal government, various agencies, numerous individual federal employees (collectively, "the Federal Defendants"), Kern County and its Sheriff and Medical Center, Lerdo and its staff, and numerous Doe defendants. See generally id. ¶¶ 19-44. Now pending is the Federal Defendants' Motion to Dismiss (dkt. 125) the TAC. As set forth below, the Court grants the Motion in part, and denies the

---

[1] Baires's mother, Dora, sues on his behalf. Id. ¶ 17.

Motion in part, as it finds that the TAC resolves a number of the problems of the Second Amended Complaint ("SAC").

## I. BACKGROUND

The basic allegations of the TAC are much the same as described in the Court's September 2010 Order (dkt. 77) and so the Court will not repeat them. In sum, Baires had been diagnosed as HIV-positive and was taking life-saving antiretroviral medications at the time ICE took him into custody on October 20, 2008. TAC ¶¶ 2; 78. Although he repeatedly stressed that an interruption in his medication would put him at grave danger, his supply of medication was cut off while at Lerdo. Id. ¶ 2. Denied adequate care despite asking for it repeatedly, Baires's condition worsened until he died of a painful and untreated staph infection on November 12, 2008. Id. ¶¶ 83-105. Teofilo Miranda was also HIV-positive and had an upcoming appointment to get treatment at the time ICE took him into custody on September 18, 2008. Id. ¶¶ 106, 110. Despite informing numerous officers and medical staff that he needed HIV medications, he missed his scheduled appointment, received no medication, suffered pain and anxiety, and did not receive competent care until December 4, 2008. Id. ¶¶ 111-131. He was released that same day, dumped on a street corner in San Francisco. Id. ¶ 132.

Plaintiffs initially brought suit in October 2009. See dkt. 1. They amended with the Court's permission in May 2010. See dkt. nos. 50, 51. The Court dismissed the First Amended Complaint as to all of the federal defendants in September 2010. See Order (dkt. 77). Plaintiffs amended again. See SAC (dkt. 80). The Court dismissed the SAC against the individual federal defendants and granted in part and denied in part the Motion to Dismiss filed by the United States. See Order (dkt. 107) (hereinafter referred to as "Order"). Plaintiffs amended again. See generally TAC. And the federal defendants again move to dismiss. See generally Mot.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

2

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, — (2009), 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949-50. In determining facial plausibility, whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

## III. DISCUSSION

### A. Individual Federal Defendants in Official Capacities[2]

The Federal Defendants' first challenge to the TAC is to the extensive allegations pertaining to individual federal defendants. For example, under the heading "Parties," the TAC alleges that Nancy Alcantar was the San Francisco Field Office Director for ICE-DRO from 2003 to 2009, and that she "authorized [Plaintiffs'] detention at LERDO, which she knew was a dangerous facility hundreds of miles from their medical teams, family and lawyers." TAC ¶ 24. Similarly, it alleges that Timothy Aitken is the Field Office Director of the San Francisco Field Office of Enforcement and Removal Operations, that he "knew that LERDO had received 'at risk' and 'deficient' ratings in 2007 and 2008," but nonetheless "failed to take corrective action against LERDO and failed to protect [Plaintiffs]." Id. ¶ 25.[3]

Despite including extensive allegations, listing the individual federal defendants as Parties, and including them in the caption, the Federal Defendants note that those individual federal defendants are not included as part of any of the causes of action. Mot. at 9.

---

[2] This section does not apply to Defendant Myrick; see *infra* section III(B).

[3] The TAC includes similar allegations relating to Maria Nguyen and Monte LeFave, id. ¶¶ 26, 28. Federal Defendants add that "Plaintiffs previously have leveled claims against Secretary Napolitano, Alcantar, [Aitken], Torres, Hayes, Sherman, Rodriguez, Shack and Mazur," none are included as defendants in the TAC, "none [of whom have] been dismissed with prejudice." Mot. at 8.

3

Plaintiffs respond that the inclusion of those defendants, named in their official capacities, was merely "another way of pleading an action against an entity of which an officer is an agent," Opp'n (dkt. 134) at 4 (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985), quoting Monell v. N.Y.C. Dep't. of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)), and that the "courts treat suits against government officials in their official capacity as suits against the government," id. (citing Hafer v. Melo, 502 U.S. 21, 25 (1991)). They assert that "Plaintiffs included detailed factual allegations regarding the role of each federal defendant in their complaint in order to add the specificity and detail required to state a claim under the [Federal Tort Claims Act, or 'FTCA']." Id.

Plaintiffs thus concede that their intent is to sue the government under the FTCA, not the individual federal defendants. Indeed, "the United States is the only proper party defendant in an FTCA action." See Kennedy v. U.S. Postal Service, 145 F.3d 1077 (9th Cir. 1998). As the TAC alleges no causes of action against any of the individual federal defendants – aside from Myrick, discussed below – and as the individual federal defendants cannot be sued under the FTCA, the Court dismisses them, with prejudice.[4]

### B. Bivens Action Against Agent Brian Myrick

The Federal Defendants next challenge the TAC's two Bivens causes of action against Defendant Myrick. See Mot. at 10-13. Myrick was Baires's Deportation Officer at Lerdo and, "[a]ccording to a 'Staff-Detainee Communication Report' that Myrick prepared," he also interviewed Miranda at Lerdo on December 1, 2008. TAC ¶ 27.[5]

The First Cause of Action charges Myrick with reckless and deliberate indifference under the Fifth and Eighth Amendments to the United States Constitution, and relates to Baires. Id. at 41. The TAC alleges that "MYRICK knew that BAIRES was suffering from chronic and substantial pain and his condition was deteriorating and he was in need of

---

[4] For the same reasons, the Court dismisses the various federal agencies listed as defendants in the caption (the Department of Homeland Security, ICE, the Division of Immigrant Health Services, and the Office of Detention and Removal). See Allen v. Veteran's Admin., 749 F.2d 1386, 1388 (9th Cir. 1984) (individual agencies cannot be sued).

[5] This is a new allegation: the SAC did not include any allegations linking Myrick to Miranda. See Order at 3 ("But the only factual allegations as to Myrick pertain to Baires, not Miranda.").

4

medical care and treatment and was not receiving it at LERDO, but he failed to take reasonable action to summon aid, or provide, or cause to be provided such medical care and treatment." Id. ¶ 163. It further alleges that "MYRICK knew or should have known that his failure to take steps to ensure BAIRES received reasonable medical care created a constitutionally unreasonable risk of harm to BAIRES while he remained jailed at LERDO." Id. ¶ 163. And it concludes that Myrick's deliberate indifference directly and proximately caused Baires pain, suffering, and death. Id. ¶¶ 164, 165.

The Second Cause of Action charges Myrick with reckless and deliberate indifference under the Fifth and Eighth Amendments to the United States Constitution, and relates to Miranda. Id. at 42. The TAC alleges that "MYRICK knew that MIRANDA was suffering from chronic and substantial pain and his condition was deteriorating, but he breached his duties to MIRANDA by acting with deliberate indifference to his serious medical needs." Id. ¶ 169. It further alleges that "MIRANDA told MYRICK that he was being denied medical care [on] December 1, 2008," and that "MYRICK promised to assist in obtaining the needed medical care, but then failed to take reasonable action to summon aid, or provide, or cause to be provided medical care and treatment." Id. ¶ 170. And it concludes that "Myrick's deliberate indifference to MIRANDA's serious medical needs" directly and proximately caused Miranda "pain, anxiety, anguish, feelings of unjust treatment, fear and other feelings of dying in jail," thereby inflicting cruel and unusual punishment. Id. ¶ 172.

The Federal Defendants seek to dismiss these causes of action against Myrick, or in the alternative, to have the Court convert their Motion to one for summary judgment, and grant summary judgment for Myrick. See Mot. at 10-13. The Court denies both requests.

### 1. Motion to Dismiss

To state a claim under Bivens, a plaintiff must allege that an individual defendant personally committed a specific wrongful act that violated a well-established constitutional right. Mot. at 10 (citing Barbera v. Smith, 836 F.2d 96, 99 (2d Cir. 1987)). A plaintiff must allege that "through the official's own actions" there was a constitutional violation. Id. at 10-11 (citing Iqbal, 129 S. Ct. at 1948)). The Federal Defendants argue that the TAC "do[es]

5

1  not begin to describe a scenario where Myrick violated the detainees' constitutional rights."
2  Mot. at 11.

3        The Federal Defendants argue first that the only allegation as to Baires is that
4  "Baires'[s] attorney sent to Myrick a facsimile. Plaintiffs do not allege that Myrick actually
5  received the facsimile at any point before he responded to it." Id. at 11-12. This argument
6  vastly understates the allegations in the TAC. The TAC alleges that Baires and his attorney
7  repeatedly reached out to Myrick for help, and that he ignored them. See, e.g., TAC ¶ 27
8  ("Although BAIRES'[s] lawyer repeatedly informed MYRICK that BAIRES was not
9  receiving his HIV medications and that this posed a threat to his life, MYRICK failed to take
10 any action"); ¶ 82 ("On October 24, 2008, BAIRES'[s] attorney faxed an urgent message to
11 MYRICK: 'I have heard from my client that he has not received his HIV medications since
12 Tuesday. Mr. Baires was receiving these medication when he was in Santa Rita, and I had
13 hoped that these medical records would have been transferred to your office. I am attaching a
14 letter from his doctor verifying his HIV diagnosis and the medications he requires. . . I
15 cannot emphasize how important it is that Mr. Baires receive his medications uninterrupted.'
16 Mr. Tam attached a letter from the Chief Physician of the HIV Division at Highland Hospital
17 stressing: 'Any interruption in his antiretroviral therapy would be extremely dangerous for
18 his health.' . . . on October 27, 2008 BAIRES'[s] attorney called MYRICK and expressed
19 alarm that BAIRES was still not receiving his HIV medications. BAIRES'[s] records
20 indicate that Agent Myrick finally made a phone call to the medical clinic at LERDO on
21 October 27, 2008."[6]); ¶ 94 ("On November 7, 2008 . . . BAIRES'[s] attorney called
22 MYRICK to express alarm that BAIRES was not receiving his medications. MYRICK
23 promised to follow up with LERDO medical staff. MYRICK did not follow up, as evidenced
24 by the lack of a notation in BAIRES'[s] medical chart."); ¶ 154 ("MYRICK . . . knew that
25 BAIRES and MIRANDA were HIV positive and were being denied HIV care and they did
26 nothing to help them"); ¶ 155 (Myrick "fail[ed] or refus[ed] to properly investigate and

---

[6] The Federal Defendants note that this three-day delay was over a weekend. See Mot. at 6.

6

1 correct the unlawful conditions and inhumane treatment of immigration detainees housed at
2 LERDO").

3 The Federal Defendants next argue that the allegations as to Miranda "are too vague
4 to support a claim of a constitutional violation" because they "only accuse Myrick of
5 possibly not 'following up' after learning that Miranda was not receiving his medication."
6 Mot. at 12. They contend that the TAC does not even allege that Myrick failed to follow up,
7 just that Miranda's medical chart contains no evidence of follow up." Id. Even if that were
8 accurate, Plaintiffs' urged inference, that the lack of notation of a follow-up means that there
9 was no follow-up, would be a reasonable one.[7] See TAC ¶ 94. But the TAC does say that
10 "MYRICK promised to assist [Miranda] in obtaining the needed medical care, but then failed
11 to take reasonable action," and refers to Myrick's "failure to ensure timely medical care after
12 inducing reliance on his promises to help." TAC ¶¶ 170, 171. Plaintiffs add that "[b]y this
13 time, Miranda had been jailed for nearly three months without HIV/AIDS treatment and his
14 physical and psychological condition had substantially deteriorated," that Myrick knew of
15 Baires's death and that Baires had been denied HIV medications," and still knowingly
16 disregarded the serious risk of harm to Miranda. Opp'n at 10.

17 The allegations therefore describe a scenario in which Myrick was informed of the
18 Plaintiffs' urgent need for medical care in light of their HIV-positive status, and did not
19 adequately respond. This is sufficient to state a claim under the deliberate indifference
20 standard.[8]

---

[7] As to Baires, the TAC earlier alleged that "It was the medical staff's practice to document calls and communications about BAIRES in his medical chart, as indicated in other entries. The absence of an entry about a call from MYRICK is confirmation that he did nothing in response to the urgent call from BAIRES' attorney." TAC ¶ 94. It is a reasonable inference that the Lerdo medical staff's practices were the same for Miranda as for Baires.

[8] Plaintiffs argue that, although the TAC speaks of the Eighth Amendment and "deliberate indifference," in fact the "professional judgment standard," a lower threshold, applies, because Plaintiffs are civil detainees and not prisoners. Opp'n at 4-6. The Court provided some support for this argument it its last Order, noting that Plaintiffs were "civil detainees awaiting adjudication . . . entitled to conditions of confinement that are not punitive, . . . [and] to 'more considerate' treatment." See Order at 8 n.10. Nonetheless, the Court went on to apply the deliberate indifference standard because both parties fell back on that test. Id. Plaintiffs now ask the Court to apply the professional judgment standard articulated in Youngberg v. Romeo, 457 U.S. 307, 323 (1982) and adopted in Neely v.

7

To state a claim for deliberate indifference, a plaintiff must demonstrate both that (1) the medical need was severe (an objective test), and (2) the defendant official acted with a sufficiently culpable state of mind (a subjective test). Smith v.Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003). The Federal Defendants do not dispute that Plaintiffs have met the first element by alleging that both Plaintiffs were HIV-positive. To satisfy the second element, "an inadvertent failure to provide adequate medical care" is not sufficient. See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); see also Farmer v. Brennan, 511 U.S. 825, 836 (1994) (describing deliberate indifference as "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other"). Courts are to inquire whether "the [prison official] knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (citing Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175, 1187 (9th Cir. 2002)). In addition, "[a] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Phelps v. Kapnolas, 308 F.3d 180, 186 (2d Cir. 2002) (quoting Farmer v. Brennan, 511 U.S. 825, 842 (1994)).

Here, the risk Plaintiffs faced by being denied adequate medical treatment was obvious; Myrick can be said to have known of and disregarded an excessive risk to their health and safety. Indeed, "an inmate with a potentially serious problem repeatedly requesting medical aid, receiving none, and then suffering a serious injury" is "the prototypical case of deliberate indifference." See Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998) (citation omitted). See also Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996) (jury could find official deliberately indifferent after he was informed of plaintiff's condition and then denied him care); Lancaster v. Monroe Cty, 116 F.3d 1419, 1425 (11th

---

Feinstein, 50 F.3d 1502, 1507 (9th Cir. 1995), disapproved of on other grounds by L.W. v. Grubbs, 92 F.3d 894, 897 (9th Cir. 1996). The Court will not do so. See Clouthier v. County of Contra Costa, 591 F.3d 1232, 1242 (9th Cir. 2010) (stating "we have concluded that the 'deliberate indifference' standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees," acknowledging that the Eighth Amendment "may provide 'a minimum standard of care' for determining the rights of pretrial detainees," and distinguishing Youngberg as relating to "the substantive due process rights of individuals detained by the state for the purpose of addressing issues associated with their mental incapacity"). Nonetheless, it is a distinction without a difference, as the Court concludes that Plaintiffs have met the higher deliberate indifference standard.

1 Cir. 1997) ("an official acts with deliberate indifference when he or she knows that an inmate
2 is in serious need of medical care, but he fails or refuses to obtain medical treatment")
3 (internal citations omitted); McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)
4 ("Even where medical care is ultimately provided, a prison official may nonetheless act with
5 deliberate indifference by delaying the treatment of serious medical needs, even for a period
6 of hours, though the reason for the delay and the nature of the delay is relevant in
7 determining what type of delay is constitutionally intolerable.") (internal citations omitted);
8 cf. Wakefield v. Thompson, 177 F.3d 1160, 1164-65 (9th Cir. 1999) ("prison official acts
9 with deliberate indifference when he ignores the instructions of the prisoner's treating
10 physician or surgeon."); Dennis v. Thurman, 959 F. Supp. 1253 (C.D. Cal. 1997)
11 ("Deliberate indifference to an inmate's serious medical needs may be manifested . . . when
12 prison officials deny, delay or intentionally interfere with medical treatment").

Accordingly, the Court DENIES the Motion as to the Bivens claims against Myrick.[9]

### 2. Motion for Summary Judgment

In the alternative to their Motion to Dismiss the claims against Myrick, the Federal Defendants ask the Court to convert the Motion to one for summary judgment and consider the declaration Myrick filed in January 2011. Mot. at 12. In that declaration, Myrick claims that he "did in fact make a telephone call on Baires'[s] behalf on the same day he received a document that was likely the facsimile from Baires'[s] counsel." Id. He also asserts "that he has no memory of being assigned to Miranda." Id. at 13. The Federal Defendants argue that "[u]nder these circumstances, the court should not presume the interview was more than a short conversation in passing." Id. The Court is unpersuaded.

That Myrick does not remember interviewing Miranda does not refute Plaintiffs' allegation (allegedly supported by "ICE documents," see TAC ¶ 120) that he did. Although his assertion that he did respond promptly to Baires's lawyer's fax directly contradicts Plaintiffs' allegations that he did not, it does not respond to Plaintiffs' further allegations that

---

[9] Note that the Court dismissed the only claim against Myrick in the SAC because it was brought by Miranda and the only allegations about Myrick in the SAC involved Baires. See Order at 3. That is no longer the case.

9

he failed to follow up on a subsequent call. See TAC ¶ 94 ("On November 7, 2008 . . . BAIRES'[s] attorney called MYRICK to express alarm that BAIRES was not receiving his medications. MYRICK promised to follow up with LERDO medical staff. MYRICK did not follow up, as evidenced by the lack of a notation in BAIRES'[s] medical chart."). As there appears to be a factual dispute as to Myrick's conduct, summary judgment is not appropriate.

In addition, Plaintiffs note that "the parties mutually agreed to postpone declarations until the Court resolved this motion to dismiss." Opp'n at 11. This suggests that Plaintiffs have not yet been able to obtain the evidence they would need to contest Myrick's Motion. Although, under Federal Rule of Civil Procedure 56(d), Plaintiffs should have filed an affidavit or declaration stating that they are not yet able to present facts in support of an opposition, that they are in that position is fairly indisputable, as no discovery has taken place (with the exception of very limited discovery on an unrelated topic, discussed below).

Plaintiffs have stated a claim against Myrick and should be allowed to take discovery from him. If the evidence demonstrates that Myrick never interviewed Miranda and acted appropriately as to Baires, he will likely choose to bring an early summary judgment motion. In the meantime, the Court DECLINES to convert the Motion to one for summary judgment.

### C. Claims Against the United States

The TAC includes six claims against the United States under the FTCA: (1) an FTCA claim sounding in negligence relating to Baires (the Fourteenth Cause of Action); (2) an FTCA claim sounding in negligence relating to Miranda (the Fifteenth Cause of Action); (3) an FTCA claim for Intentional Infliction of Emotional Distress ("IIED") relating to Baires (the Sixteenth Cause of Action); (4) an FTCA claim for IIED relating to Miranda (the Seventeenth Cause of Action); (5) an FTCA wrongful death claim relating to Baires (the Eighteenth Cause of Action); and (6) an FTCA Survivor Action relating to Baires (the Nineteenth Cause of Action). See TAC ¶¶ 243-297.[10]

---

[10] Because the Federal Defendants do not challenge the Eighteenth or Nineteenth Causes of Action, see Opp'n at 18 n.6, this Order will not address them.

10

### 1. Exceptions to the FTCA

The Federal Defendants devote just two pages to the six FTCA causes of action, essentially making the same arguments they made as to the SAC. Thus the Federal Defendants argue that "[a]s noted in earlier motions and orders, the FTCA constitutes only a limited waiver of sovereign immunity," Mot. at 13 (citing 28 U.S.C. § 2671 (2000); Letnes v. United States, 820 F.2d 1517, 1518 (9th Cir. 1987)). They complain that Plaintiffs "again seek to hold the United States responsible for alleged missteps of County government personnel," in violation of the independent contractor exception to the FTCA. Mot. at 13 (citing Logue v. United States, 412 U.S. 521, 526 (1973)). And they argue that Plaintiffs "again seek to assert FTCA claims against the United States on the ground that federal agencies have a duty to choose other independent contractors or to send individual detainees to some place other than Lerdo," in violation of the discretionary function exception to the FTCA. Id. at 14.

### a. Independent Contractor Exception

The independent contractor exception provides that the United States may only be sued for the negligence of its own employees. See 28 U.S.C. § 2671; Letnes, 820 F.2d at 1518. But the Court's last Order found that the SAC contained allegations that federal employees – not contractors – "did allegedly transfer [Baires] without his medication, take an excessive amount of time to address his requests for medication, and cause Miranda to miss medical appointments at which he hoped to receive such medication." Order at 12 (citing SAC ¶¶ 82, 85, 95, 112). The Court held that such allegations were adequate to state a FTCA claim and that "the independent contractor exception bars the allegations in the SAC that pertain to independent contractors, but not those that pertain to federal employees." Id. The Court now makes the same uncontroversial holding as to the TAC, which contains even more detailed allegations about the acts of individual federal employees. See generally TAC.

The Federal Defendants argue, however, that "to the extent that this court has suggested plaintiffs could establish a claim by including allegations that the United States [was] involved in the alleged denial of care, plaintiffs have instead included in the TAC

11

allegations to the contrary." Reply at 7. They contend that the TAC "demonstrate[s] that information forwarded to the United States (through Myrick) was properly and promptly reported up the chain of command and to the proper officials at Lerdo." Id. But that is not a reasonable characterization of the allegations as to Myrick. See *supra* section III(B) (discussion of Bivens claims against Myrick). The Federal Defendants might demonstrate through Myrick's deposition and supporting documents that he acted appropriately, but the TAC alleges otherwise, and it is those allegations that are the subject of the present Motion.

### b. Discretionary Function Exception

Next, the discretionary function exception bars subject matter jurisdiction over "[a]ny claim . . . based upon the exercise or performance or the failure to perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (2006). The Court held in the last Order that "deciding whether to send detainees to one facility or another" is a discretionary function over which the Court lacks jurisdiction. Order at 12-13. The Court does not find any basis for changing that holding,[11] and so agrees with the Federal Defendants that any allegations relating to the decision of where to send detainees are dismissed. Mot. at 14.

That appears to be all that the Federal Defendants are seeking, see id., but the Court notes that ample allegations in the TAC relate to conduct by federal employees that is unrelated to where to send detainees, and does not allow for discretion.

In the last Order, the Court held that "[t]o the extent Plaintiffs challenge the United States's provision and/or supervision of medical care, the exception does not apply to the facts as pleaded" because Plaintiffs alleged that "'DHS has adopted an explicit policy requiring on-going monitoring and inspection of all immigration detention facilities to ensure that detainees are not put at risk,' and that federal employees 'failed to follow this policy.'"

---

[11] The closest the TAC comes to undermining that holding is in alleging that Medical Standards require that detainees with "infectious diseases must be placed in the appropriate healthcare setting." TAC ¶ 54. But the determination of the "appropriate healthcare setting" would still necessarily involve consideration of social, economic and political policy, in addition to medical need. See Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536-37 (1988).

12

Order at 13 (citing SAC ¶¶ 243-57). The Court allowed for some limited discovery as to all "manuals, protocols, reports and guidelines limiting the discretion of those charged with on-site and off-site monitoring facilities and implementing policies related to such monitoring," id. at 13 n.13, and invited the defendants to "raise this argument again . . . if appropriate," id. at 13.

Although the Plaintiffs no longer assert that the Federal Defendants adopted an explicit policy to monitor Lerdo and failed to follow that policy, the TAC does provide a great deal more detail about the annual compliance inspection reviews that ICE conducts of detention facilities, alleging that "Where deficiencies are identified, Field Officer Directors must require facilities to submit corrective action plans and then remediate them within 90 days." TAC ¶ 51. It goes on to allege that "In January of 2008, LERDO received a deficiency rating for non-compliance with standards related to 'access to medical care,' thus they were required to ensure that deficiency was corrected within 90 days. LERDO received a repeat deficiency rating in this category 14 months later." Id. Thus, contrary to the Federal Defendants' assertion that "plaintiff has pointed to no such mandatory policies," Reply at 8, there is some support for the notion in the SAC that the Federal Defendants were obligated to monitor Lerdo and were both responsible for and derelict at fixing its problems.

Moreover, the TAC is brimming with references to mandatory National Detention Standards that Plaintiffs allege were violated. The Opposition states:

> National Detention Standards require, among other things, that ICE/DRO employees and contract personnel provide access to a continuum of health services, including prevention, health education, diagnosis and treatment; written information about how to access health care; timely follow-up to health care requests; continuity of care from admission, to transfer, discharge, or removal, including referral to community-based providers when indicated; care and treatment for chronic conditions; transfer of medical records with detainees moved from one facility to another; and a 7-day supply of medication when a transfer takes place. (TAC ¶¶ 55-59) ICR/DRO employees violated every single one of these standards in relation to Baires and Miranda.

See Opp'n at 12-13. The discretionary function exception will not apply where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz by Berkovitz, 486 U.S. at 536. So, for example, the TAC alleges that ICE officers transferred Baires from Santa Clara County Jail, where he was receiving HIV

13

1 medications, to Lerdo, without sending with him his medical records or a supply of HIV
2 medication. See TAC ¶ 79. This was not a discretionary decision but, according to
3 Plaintiffs, violation of a policy that specifically prescribed a different course of action. The
4 Court therefore finds that the discretionary function exception only bars the allegations
5 discussed in the last Order. See Order at 12-13.

6 The Court further notes that the Federal Defendants seek judicial notice of "the 2007
7 United States Immigration and Customs Enforcement ("ICE") National Detention Standards"
8 and "suggest[] that no standard has in fact been violated." Mot. at 14; RJN (dkt. 127).
9 Plaintiffs do not object to the Court's taking notice of the document, and, as a government
10 document available on the Internet,[12] it does appear to be "can be accurately and readily
11 determined from sources whose accuracy cannot reasonably be questioned." See Fed. R.
12 Evid. 201. However, it is not clear to the Court whether the document is the same one(s)
13 upon which Plaintiffs rely.[13] Even if it is, the allegations in the TAC are inconsistent with
14 several of the standards in the document. See, e.g., RJN at USA-312 ("If a detainee requires
15 emergency medical care the officer will immediately take steps to contact a health care
16 provider"); USA-315 ("HIV positive detainees should be hospitalized until any acute
17 treatment deemed necessary is completed"); USA-318 ("When a detainee is transferred to
18 another detention facility, the detainee's medical records, or copies, will be transferred with
19 the detainee."). Therefore, the document does not change the outcome of the Motion.

20 **2. Whether the FTCA Causes of Action Based on Negligence and Intentional Infliction of Emotional Distress State a Claim**

21
22 The Federal Defendants go on to dedicate a single paragraph of their Motion to the
23 FTCA claims based on Negligence and IIEP (the Fourteenth through Seventeenth Causes of
24 Action). See Mot, at 14-15. These arguments are cursory and do not provide an adequate
25 basis for dismissal.

---

27 [12] U.S. Immigration and Customs Enforcement, 2000 Detention Operations Manual, website address http://www.ice.gov/detention-standards/2000/.

28 [13] Plaintiffs do not attach to the TAC the National Detention Standards referenced, so the Court cannot compare the two.

14

### a. FTCA-Negligence Claims

The Fourteenth and Fifteenth Causes of Action are FTCA claims sounding in negligence against the United States, and relate to Baires and Miranda respectively. See TAC ¶¶ 243-266. The FTCA only provides for liability as to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred, 28 U.S.C. § 1346(b) (1996), and that "law of the place" means state law. See FDIC v. Meyer, 510 U.S. 471, 478 (1994) (internal citations omitted). Thus, to demonstrate negligence under the FTCA, a plaintiff must prove the same elements that state law requires for the substantive cause of action. See Rayonier Inc. v. United States, 352 U.S. 315, 318 (1957). The last Order dismissed the negligence-based causes of action because the SAC did not cite a relevant state law. The TAC now does, although it is to an incorrect section. See TAC ¶¶ 245, 257 ("This action is brought under the California Negligence statute (Civil Code 1708).").[14] Nonetheless, the Court will construe the TAC as referring to California Civil Code § 1714, Responsibility for willful acts and negligence; furnishing alcoholic beverages; legislative intent; liability of social hosts; liability of parents, guardians, or adults who furnish alcoholic beverages to minors, which provides that "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care of skill in the management of his or her property or person. . . ." See also Sears v. Morrison, 76 Cal. App. 4th 577, 579-80 (1999) (applying Cal. Civ. Code § 1714).

To establish a claim of negligence under California law, a plaintiff must show that "[1] the defendant owed the plaintiff a legal duty, [2] the defendant breached the duty, and [3] the breach was a proximate or legal cause of injuries suffered by the plaintiff." Quechan Indian Tribe v. United States, 535 F. Supp. 2d 1072, 1107 (S.D. Cal. 2008) (internal citations omitted). The TAC does this. It alleges that the Federal Defendants owed Plaintiffs a duty by taking them into custody, TAC ¶¶ 247, 259, placing them in a position of peril, id. ¶¶ 248,

---

[14] Section 1708, "Injuring person or property of another, or infringing upon any of his or her rights," provides, "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights."

15

1  260, inducing reliance on their promises to help them, id. ¶¶ 249, 261, characterizing their
2  relationship with detainees as one of a physician and patient, id. ¶¶ 250, 262, and authorizing
3  medical care for Baires, id. ¶ 250. It further alleges that the Federal Defendants breached
4  those duties by, among other things, failing to provide Plaintiffs with reasonable medical
5  care, failing to ensure continuity of care in transferring Plaintiffs between detention facilities,
6  deliberately obstructing and delaying access to medical care, and "promising to summon
7  medical care and address deprivations of HIV medications . . . and then failing to act
8  reasonably in summoning such care." Id. ¶¶ 251, 263. And it alleges that those breaches
9  proximately caused the Plaintiffs' injuries. Id. ¶¶ 253, 254, 265, 266. These allegations
10 sufficiently state a claim for negligence.

11 The Federal Defendants argue, however, that "Plaintiffs have not stated a proper claim
12 against a public entity for negligence in the provision of medical care in a prison context."
13 Mot. at 15 (citing Cal. Gov't Code § 845.6 (West) (1963)). That section provides: "Neither a
14 public entity nor a public employee is liable for injury proximately caused by the failure of
15 the employee to furnish or obtain medical care for a prisoner in his custody; but, except as
16 otherwise provided by Sections 855.8 and 856, a public employee, and the public entity
17 where the employee is acting within the scope of his employment, is liable if the employee
18 knows or has reason to know that the prisoner is in need of immediate medical care and he
19 fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6.
20 Even if the failure to summon medical care was the only basis for Plaintiffs' negligence
21 claims – it is not, see Opp'n at 17 – the allegations of the TAC adequately allege that the
22 Federal Defendants, and particularly Myrick, "kn[ew] . . . that the prisoner [was] in need of
23 immediate medical care and [failed] to take reasonable action to summon such care." See
24 Cal. Gov't Code § 845.6. The FTCA-negligence claims are adequate.

### b. FTCA-Intentional Infliction of Emotional Distress Claims

26 The Sixteenth and Seventeenth Causes of Action in the TAC are FTCA claims for
27 IIED relating to Baires and Miranda respectively. See TAC ¶¶ 267-285. Again, the FTCA
28 only provides for liability as to "circumstances where the United States, if a private person,

16

1  would be liable to the claimant in accordance with the law of the place where the act or
2  omission occurred, 28 U.S.C. § 1346(b). To state a claim for IIED in California, a plaintiff
3  must allege: "(1) extreme and outrageous conduct by the defendant with the intention of
4  causing, or reckless disregard of the probability of causing, emotional distress; (2) the
5  plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate
6  causation of the emotional distress by the defendant's outrageous conduct." See Davidson v.
7  City of Westminster, 32 Cal.3d 197, 209 (1982) (internal citations omitted). The IIED
8  causes of action include each necessary element, see TAC ¶¶ 268, 277 ("extreme and
9  outrageous conduct"); id. ¶¶ 273, 282 ("severe emotional distress"); id. ¶¶ 274, 283, 284
10 ("direct and proximate result").

11 Moreover the body of the TAC is rife with allegations in support of these elements.
12 See, e.g., TAC ¶ 61 ("ICE and DHS justify this burdensome system of access to medical care
13 as a cost-saving device. Indeed, they provide reports on how much money ICE has saved
14 based on denials of requests for treatment for detainees"); id. ¶ 92 (describing 16 day delay in
15 approval for immunology consult and asserting, "DIHS deliberately delayed approvals for
16 HIV medication as a matter of policy. According to DIHS reports, the motive for this delay
17 was cost savings"); id. ¶¶ 87-88 (describing Baires's letters to mother and girlfriend while
18 suffering from untreated ailments: "I have been crying of the pain I am not eating or sleeping
19 because of the pain" and "I am writing the letter little by little because the pain will not let
20 me do anything. I don't even have an appetite because of it. The only thing I do is cry. I cry
21 as I have never cried before."); id. ¶ 130 (alleging as to Miranda, "He thought constantly
22 about BAIRES'[s] death, and was tormented by the possibility that he would also die, sick
23 and alone, without anyone knowing or caring."). As the Court held in relation to the SAC,
24 "the [complaint] adequately alleges these elements." Order at 14 n.14.

25 The Federal Defendants argue, however, that "Plaintiffs have not stated a cause of
26 action against a public entity in the prison context." Mot. at 14-15 (citing Wright v. State,
27 122 Cal. App. 4th 659 (2004)). Presumably they cite Wright, 122 Cal. App. 4th at 672
28 (quoting § 844.6(a)(2)), because in that case, the court held that under the California Tort

17

Claims Act ("CTCA"), "a public entity is not liable for an injury to any prisoner or for an injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner. . . ." But Wright is distinguishable. This case involves the FTCA, not the CTCA. Under the FTCA, the United States is liable if a private person would be liable. See 28 U.S.C. § 1346(b)(1). That is so even if California law would provide immunity for public entities. See, e.g., Indian Towing Co. v. United States, 350 U.S. 61, 65 (1955) (rejecting reading of FTCA "as imposing liability in the same manner as if [the government] were a municipal corporation and not as if it were a private person"); Wright v. United States, 719 F.2d 1032, 1043 (9th Cir. 1983) (plaintiff could sue IRS agent for malicious prosecution under the FTCA even though California law provided California government agents immunity from malicious prosecution; equating United States to state municipal corporation under state law would be erroneous); Guy v. United States, 492 F. Supp. 571, 571-72 (N.D. Cal. 1980) (federal prisoner allowed to sue prison official for negligence even though California state law would provide immunity for state officials on those facts). The FTCA-IIED claims are adequate.

### 3. Conclusion as to FTCA Claims

The Court will therefore GRANT the Motion in part (as to the allegations involving independent contractors and about the decision of where to house detainees) and DENY the Motion in part (as to the remaining allegations).

### D. Motion to Strike

Finally, the Federal Defendants move to strike what they assert are immaterial and scandalous materials in the TAC. See Mot. at 15-16. Federal Rule of Civil Procedure 12(f) provides that, upon a motion by either party, a court may order stricken from any pleading any immaterial or impertinent matter. Immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994). Impertinent matter does not pertain, and is not necessary, to the issues in question. Id.

18

Specifically, the Federal Defendants ask the Court to strike three categories of material: (1) the names of people in the caption who do not have causes of action pending against them, and the background of those individuals; (2) the "scandalous" allegations that the defendants' policies "kill defenseless detainees"; and (3) "materials regarding allegations for which no claim is or may be pursued," such as that "hundreds of individuals" are incarcerated. Mot. at 15-16.

As to the first category of materials, the Court is dismissing with prejudice the individuals who do not have causes of actions pending against them, so there is no need to also strike them. The backgrounds for those individuals are relevant to Plaintiffs' FTCA claims against the United States and should remain in. The same is true of the third category of materials: they provide useful context for the Plaintiffs' narrative, and so are neither immaterial nor impertinent.

As to the second category of materials, the TAC is no doubt impassioned and dramatic, but that is permissible. Moreover, the Ninth Circuit does not look favorably on strike motions given "the limited importance of pleadings in federal practice." See Rosales v. Citibank, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001) (internal citations omitted).

Accordingly, the Court DENIES the Motion to Strike.

## IV. CONCLUSION

For the foregoing reasons, the Court:

- GRANTS the Motion as to the individual federal defendants against whom no cause of action is alleged;

- DENIES the Motion as to the Bivens claims against Myrick;

- DECLINES to convert the Motion to one for summary judgment as to Myrick;

- GRANTS IN PART (as to the allegations involving independent contractors and about the decision of where to house detainees) and DENIES IN PART (as to the remaining allegations) the Motion as to the FTCA;

- DENIES the Motion as to the FTCA-Negligence and FTCA-IIED claims; and

//

//

1 • DENIES the Motion to Strike.

2 **IT IS SO ORDERED.**

Dated: December 9, 2011



CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2009\5171\order re TAC.wpd    20